**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUSTIN JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00336-RAH-JTA** |
| | ) | |
| **WAAWAATESI LLC,** | ) | |
| **d/b/a GREENLINE LOAN,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS' RESPONSE IN OPPOSITION TO**</u>
<u>**PLAINTIFF'S MOTION TO REMAND**</u>

Defendants Waawaatesi LLC, d/b/a Greenline Loan, Jessi Lorenzo (a/k/a Jessi Phillips),

and Joseph Wildcat (collectively, "Tribal Defendants"), by and through undersigned counsel, files

this Response in Opposition to Plaintiff's Motion to Remand, (Doc. 6).  In support thereof, Tribal

Defendants state and allege as follows:

**I.      BACKGROUND**

Plaintiff Justin Johnson, an Alabama resident, commenced a civil action in Russell County,

Alabama against Defendants Waawaatesi LLC, d/b/a Greenline Loan ("Greenline"), a tribal

limited liability company organized and existing under the laws and ordinances of the Lac Du

Flambeau Band of Lake Superior Chippewa Indians ("Tribe"); Joseph Wildcat, Sr., the former

Tribal President of the Tribe; and, Jessi Phillips, a former executive associated with Greenline and

citizen of the state of Florida.  (Doc. 1-1 ¶¶ 1-13).  Plaintiff's claims arise out of a loan he allegedly

entered into with Greenline. (Doc. 1-1 ¶¶ 29). Plaintiff seeks to represent a class of similarly

situated Alabama borrowers who received loans from Greenline from March 28, 2018 to the time

of class certification. (Doc. 1-1 ¶¶ 41).

1

Plaintiff's Complaint seeks relief on behalf of a putative class of Alabama consumers and alleges violations of the Alabama Small Loans Act, Ala. Code § 5-18-1, *et seq.* Specifically, the Complaint seeks three distinct types of recovery for himself and the putative class.  *First*, Plaintiff seeks the return of all monies Alabama borrowers paid to Greenline in connection with the loans at issue (the "Tribal Loans").   *Second*, Plaintiff seek a finding that the Tribal Loans be deemed void, therefore discharging any outstanding loan obligations the Alabama borrowers owe to Greenline under their loan agreements. *Third*, Plaintiff seeks the entry of an injunction against Tribal Defendants whereby Tribal Defendants be permanently enjoined from extending loans to Alabama residents.  *See* Complaint, (Doc. 1-1, p. 17).

On June 3, 2022, Tribal Defendants timely removed this case to the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453 ("CAFA"), given that this is a class action with at least 100 putative class members, there is diversity of citizenship between at least one class member and a defendant, and the aggregate amount in controversy exceeds $5,000,000. (Doc. 1, p. 4-7).

On June 13, 2022, Plaintiff filed a Motion to Remand to State Court. (Doc. 6.). In his motion, Plaintiff does not dispute that this is a class action with at least 100 putative class members.[1] Nor does he dispute that diversity of citizenship exists.[2] Instead, Plaintiff's sole

---

[1] As noted in the notice of removal, but repeated here for clarity, although this action was filed by Plaintiff as a putative class action and is therefore removable under the relevant statutes, Tribal Defendants do not admit or concede that this action can properly proceed as a class action. Defendant expressly reserves the right to assert that Plaintiff has contractually waived his right to proceed with a class action or that the action brought by Plaintiff meets the requirements of Fed. R. Civ. P. 23 or any other applicable rule.

[2] Although diversity of citizenship is not at issue, out of an abundance of caution, Tribal Defendants are including here a Declaration of Jessi Phillips, attached hereto as Exhibit B, confirming Ms. Phillips is a resident and citizen of the state of Florida. *See* Exhibit B. Because Plaintiff is a resident of Alabama, minimal diversity is established here. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 n. 24 (11th Cir. 2007)(explaining CAFA requires only minimal diversity to be met, which is satisfied when "only one member of the plaintiff class – named or unnamed – [is] diverse from any one defendant.").

argument on remand is that "Defendants have failed to provide the Court with a sufficient basis to estimate the amount in controversy." (Doc. 7, p. 6)

Simply put, there is sufficient evidence that the amount in controversy exceeds the jurisdictional threshold of $5,000,000.  From March 28, 2018 until June 3, 2022[3] (the date this case was removed to this Court), 6,512 Alabama borrowers took out loans with Greenline for the principal amount of $1,500 or less.  The total amount due and owed to Greenline on those loans extended to Alabama borrowers totals $7,532,165.11.  Greenline has already received $4,030,663.78 in payments on those loans and is still due and owed an additional $3,501,501.40. (*See*, Declaration of Raquel Bell dated June 30, 2022, attached hereto as Exhibit A).

Accordingly, Plaintiff's motion to remand should be denied as this Court has proper jurisdiction over the case.

## II.    DISCUSSION

It is undisputed that the party removing an action under CAFA bears the burden of establishing that CAFA requirements have been met by a preponderance of evidence. *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 752 (11th Cir. 2010) (emphasis added). Here, Tribal Defendants have met this burden, sufficiently showing that the amount in controversy well exceeds $5,000,000 and all requirements under CAFA have been met.

In an attempt to distract from the fact that the amount-in-controversy here is well over $5,000,000, Plaintiff throws out a number of strawman arguments in an attempt to remand the case to state court. This Court should not find these arguments persuasive, but instead, should find

---

[3] Attached as Exhibit C to Tribal Defendants' Notice of Removal, was a declaration from Raquel Bell dated May 26, 2022.  (Doc. 1-3). Ms. Bell is the Compliance Manager overseeing Greenline's activities.   Ms. Bell's Declaration contained figures related to the putative class and alleged damages for a time period from March 28, 2018 to April 21, 2022.  Ms. Bell has since updated her declaration and provided figures for the time-period from March 28, 2018 to June 3, 2022 (the date of removal).

KC 18335065.2

Tribal Defendants' removal under CAFA was proper for two reasons. *First*, Tribal Defendants'

notice of removal sufficiently established, by a preponderance of the evidence, that the amount-

in-controversy exceeds $5,000,000 here. *Second*, even if this Court finds Plaintiff's arguments

persuasive, the updated Declaration of Raquel Bell, attached hereto as Exhibit A, conclusively

shows the amount-in-controversy is well over $5,000,000.

> **A.      Defendants' Notice of Removal sufficiently established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000.**

Plaintiff argues Tribal Defendants' notice of removal was deficient in two ways: (1) Bell's

declaration omits the word "Alabama" when stating how many borrowers are included in

Plaintiffs' class definition, and (2) Tribal Defendants' estimation of damages, based on Plaintiff's

claimed damages and the number of class members, was improper. These arguments fail for

several reasons.

Plaintiff first argues that Bell's declaration fails to specify that the amount of borrowers

listed are Alabama borrowers. This alleged "deficiency" is nothing more than Plaintiff's attempt

to mischaracterize the declaration. Bell's declaration clearly was referencing only Alabama

borrowers' information, as relevant to Plaintiff's proposed class definition. However, out of an

abundance of caution, Tribal Defendants are attaching hereto an amended declaration, specifically

stating that this number is related to *Alabama* borrowers only. *See* Exhibit A; *see also Pretka,* 608

F.3d at 755 *(*"[t]he substantive jurisdictional requirements of removal do not limit the types of

evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may

introduce their own affidavits, declarations, or other documentation.") (emphasis added).[4]

---

[4] The Court in *Pretka* further found that a court may consider affidavits and declarations submitted in response to a motion for remand, and is not limited only to the initial notice of removal and accompanying documents. *Pretka*., 608 F.3d at 56; *see also USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 206 n. 12 (3d Cir. 2003) (holding that a defendant may establish jurisdictional facts by filing affidavits in response to the plaintiffs' motion to remand).

KC 18335065.2

Plaintiff then argues that Tribal Defendants "ask the court to speculate that all class members suffered the same amount of damages as the named Plaintiff … but there is no evidence to support such a calculation." (Doc. 7, p. 4). This argument is both factually and legally incorrect.

Contrary to Plaintiff's assertions, Tribal Defendants' notice of removal does not ask that this Court rely on mere speculation in finding the amount-in-controversy has been established. Instead, Tribal Defendants' notice of removal provides a common sense application of the facts here – Plaintiff's purported damages are $892.32, and according to Bell's declaration, the putative class consists of, at a minimum, 6,157 individuals. Applying Plaintiff's damages to the amount of members in the class, the amount-in-controversy exceeds $5,000,000.[5]

The Eleventh Circuit has established that "when a defendant makes specific factual allegations establishing jurisdiction and can support them with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations … [this is] not akin to mere conjecture, speculation, or star-gazing." *Pretka*, 608 F.3d at 754 (citing *Northup Props., Inc. v. Chesapeake Appalachia*, L.L.C., 567 F.3d 767, 770–71 (6th Cir.2009) (concluding that the defendant's affidavits were specific enough to prevent the determination of the amount in controversy "from becoming a matter of judicial star-gazing")).  "A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id*. (emphasis added).

Here, Tribal Defendants' common sense calculation sufficiently applied factual evidence – the number of borrowers and the amount of Plaintiff's alleged damages – and asked the Court to make reasonable inferences therefrom. *Pretka* at 754. Tribal Defendants are not required to spend time and expenses delineating each class member's specific amount of damages. Nor should it

---

[5] The total amount, taking 892.32 times 6,157 individuals, is $5,494,014.24.

have to. Tribal Defendants are required only to prove it is more likely than not that the amount in controversy exceeds $5,000,000.

Because Tribal Defendants applied Plaintiff's own claimed damages – not the highest amount of damages possible, which is well over $1500 – Defendants certainly established it is more likely than not that the amount-in-controversy is estimated to be over $5,000,000. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation") (emphasis added).

Tribal Defendants' calculation becomes even more sensible in light of the specific damages the putative class allegedly will be seeking. The purported putative class covers all borrowers who borrowed from Greenline any principal amount of $1,500 or less. But the Complaint seeks reimbursement of more than just the principal amount of the loan, instead seeking all sums collected, received or retained. This includes corresponding fees and interest, which necessarily means certain putative class members will have claims exceeding Plaintiff's alleged damages of $892.32. But Tribal Defendants did not include that likelihood in its calculation.   Tribal Defendants' could have, but chose not to, applied the upward limit of likely damages, which would yet again far exceed the $5,000,000 requirement. *See Lee-Bolton v. Koppers Inc.*, 848 F. Supp. 2d 1342, 1355 (N.D. Fla. 2011) (applying the possible "upward limit on each claim" as the "proper measure of the amount in controversy in this action as it is the maximum value that this action could possibly represent to each putative class member"); *see also Kemper v. Quicken Loans, Inc.*, No. 5:13-CV-91, 2013 WL 5504152, at *4 (N.D.W. Va. Oct. 2, 2013) ("multiplying the individual damage amounts pled in the complaint by the number of persons in an alleged class is a reasonable method for determining the amount in controversy"); *Cowit v. Citimortgage, Inc.*, 2013 WL

KC 18335065.2

142893 (S.D. Ohio January 11, 2013) ("Courts routinely rely on such basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold.").

Tribal Defendants' notice of removal sufficiently established, by a preponderance of the evidence, that the amount-in-controversy here exceeds $5,000,000. Notably, Plaintiff does not dispute this amount, instead relying on misplaced factual and legal arguments. This Court should reject these arguments, and find instead that Tribal Defendants have met their burden of proving CAFA jurisdiction is proper here.

**B.     The Amount-In-Controversy Here Exceeds $5,000,000 Required for CAFA.**

Tribal Defendants maintain their notice of removal sufficiently established, by a preponderance of the evidence, that the amount-in-controversy here exceeds $5,000,000.  Tribal Defendants further maintain that, contrary to Plaintiff's arguments for remand, they are not required to spend time and resources reviewing and providing numbers that "banish all uncertainty" as to the amount-in-controversy. *See Pretka*, 608 F.3d at 754 (citation omitted) ("A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it").

However, out of an abundance of caution, Tribal Defendants are providing additional numbers regarding the claims at issue here. *See* Exhibit A, Declaration of Raquel Bell. These numbers expand on Bell's first declaration, further proving that the amount-in-controversy here exceeds $5,000,000.

A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.,* 745 F.3d 1312, 1315 (11th Cir. 2014). Here, Tribal Defendants properly removed this case on June 3, 2022. Accordingly, the numbers below reflect the amount-in-controversy as it stood on June 3, 2022.

KC 18335065.2

As stated above, Plaintiff seeks three main types of relief here: (1) recovery of "all sums collected, received or retained by Defendants in connection with the [Tribal Loans]," (2) declarations that each of the loan contracts entered into between class members and Greenline are void in their entirety, and (3) declaratory and injunctive relief, specifically an injunction that would prevent Tribal Defendants from servicing loans in Alabama at any point in the future. The relief sought, when viewed together, exceeds $5,000,000 and satisfies the amount-in-controversy here.

*First*, Plaintiff's claim for recovery of all sums collected, received, or retained by Greenline includes not only the principal amount loaned to all class members, but also the corresponding interest and fees associated with the Tribal Loans. This relief alone exceeds $4,000,000 – specifically, Greenline has collected $4,030,663.78 from loans serviced to Alabama borrowers between March 28, 2018 and June 3, 2022 that were for the principal amount of $1,500 or less. *See* Exhibit A, ¶ 7. This encompasses a total amount of 6,512 loans. *Id*. at ¶ 5.

*Second*, Plaintiff seeks a declaration stating the loan agreements between Greenline and all class members are void *ab initio*. This effectively discharges all repayment obligations under the loan agreements between Greenline and Alabama borrowers. Valuing this relief from the view of the putative class, that's an additional $3,501,501.33[6] total in value to the putative class. Class members no longer having to pay this amount to Greenline undoubtedly constitutes a direct monetary value to the class members. *See Cohen v. Office Depot, Inc*., 204 F.3d 1069, 1076-77 (11th Cir. 2000) (citation omitted) ("the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.").

---

[6] The Declaration of Raquel Bell states that, between March 28, 2018 to June 3, 2022, the amount due to Greenline from Alabama borrowers who took out loans for a principal amount of less than $1500 is $7,532,165.11. Of that $7,532,165.11, Greenline has collected $4,030,663.78, leaving an additional $3,501,501.33 remaining unpaid by class members. Exhibit A, ¶ 6-7.

KC 18335065.2

*Third* and finally, Plaintiff seeks relief in the form of an injunction preventing Tribal Defendants from lending to Alabama residents at any point in the future.  Plaintiff argues this injunction should be valued at $0 because it does not result in any monetary benefit to the class members. But at least one court in this circuit has cast doubt on applying the "plaintiff's perspective" test when the defendant is seeking removal to federal court, as opposed to the plaintiff seeking to prove amount in controversy exists for diversity jurisdiction. *See Glover v. Midland Mortg. Co. of Oklahoma*, 228 B.R. 293, 308 (N.D. Ala. 1998) ("This court notes that the defendant, not the plaintiff, is seeking entry into the federal courthouse. Given that fact, the defendant should be required to demonstrate that, for it, the value of the proposed injunctive relief is greater than $75,000.00, and that, from its perspective, the removal is proper.")

Here, Tribal Defendants are seeking removal to federal court, in part, to protect their right to continue lending to Alabama residents under the same business model, which has a value of over $5,000,000 to Tribal Defendants. *See* Exhibit A. This Court should consider such burdensome relief in evaluating the amount-in-controversy, but even if it does not, the amount of monetary relief sought alone exceeds $5,000,000 and satisfies CAFA requirements.

These numbers show the amount in controversy here exceeds $5,000,000. Even considering only the amount already collected and the amount due as of the date of removal, the amount-in-controversy exceeds $5,000,000. As such, Tribal Defendants' have satisfied their burden of proving, beyond a preponderance of the evidence, that removal pursuant to CAFA was proper, and Plaintiff's motion to remand the case to state court should be denied.

## III.    CONCLUSION

For these reasons, Defendants respectfully request that this Court deny Plaintiff's Motion to Remand to State Court (Doc. 6), and for such further relief the Court deem necessary.

KC 18335065.2

Respectfully submitted

*/s/ John N. Bolus*
John N. Bolus
Maynard Cooper Gale
1901 Sixth Ave. N, Suite 1700
Birmingham, AL 35203
Telephone: (205) 254-1025
Fascimile: (205) 714-6325
Email: JBolus@maynardcooper.com

**Attorney for Defendants
Waawaatesi LLC, d/b/a Greenline Loans,
Jessi Lorenzo (a/k/a Jessi Phillips) and
Joseph Wildcat**

## CERTIFICATE OF SERVICE

      The undersigned certifies that on this 1st day of July 2022, the foregoing document was filed electronically with the Courts CM/ECF system and served on the parties via the Court's electronic filing system.

*/s/  John N. Bolus*
**Of Counsel**