**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUSTIN JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 3:22-cv-00336-RAH-JTA** |
| | ) | |
| **WAAWAATESI LLC,** | ) | |
| **d/b/a GREENLINE LOANS et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**COMES NOW** Plaintiff and, in response to Defendants Waawaatesi, LLC, d/b/a Greenline

Loans ("Waawaatesi" or "Greenline"), Jessi Lorenzo and Joseph Wildcat's Motion to Dismiss for

Improper Venue, Lack of Subject Matter Jurisdiction and Failure to State a Claim and to Compel

Arbitration [Doc. 17], submits the following memorandum:

**INTRODUCTION AND SUMMARY**

Greenline extends small payday loans to borrowers in Alabama which blatantly violate

Alabama law.  Greenline is not a licensed small loan lender in Alabama and its rates far exceed

the limits imposed by the Alabama Small Loans Act ("ASLA").  Under the ASLA extending such

a loan in Alabama is a crime and the entire agreement is void *ab initio*.

Greenline seeks to evade state law through arbitration and governing law provisions

designed to prevent the adjudication of any state law claim.  Greenline's arbitration clause employs

the broadest possible scope and specifically includes "all state law claims" and "all claims based

upon a violation of any state statute."   At the same time, Greenline's "Governing Law" provision

selects "tribal law" and "applicable federal law" as the exclusive governing law, "without regard to the laws of any state."

Defendants present the arbitration issue in simplest terms: There is an arbitration clause, Plaintiff's claims are included in the scope and there is a delegation clause. Therefore, say Defendants, all issues, including arbitrability, are to be decided by the arbitrator. This ignores the extreme and unusual nature of Greenline's arbitration scheme. With its ban on state law, Greenline's contract not only bars state law claims, it prevents the arbitrator from applying any state law to issues regarding the enforceability of the clause itself, including contract defenses. The FAA requires the application of state law. Without access to state law, the arbitrator has no way to determine the validity of the arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Also, the delegation clause, as well as the entire arbitration agreement, is void under the ASLA and as against fundamental public policy.

The Complaint specifically challenges the validity of the delegation clause. Therefore, the Court (not the arbitrator) must adjudicate those challenges. Because the state law ban renders the delegation clause invalid, the Court must decide the validity of the arbitration clause as a whole.

The arbitration clause as a whole is unenforceable for several reasons. First, it violates fundamental public policy by extinguishing the remedies expressly provided in the ASLA. Second, the clause is part of a contract that is void by operation of the express terms of ASLA. The clause is also void because it directly conflicts with state statutory requirements and because the subject matter of the contract (an unlicensed small loan) is a crime. Finally, the clause is unenforceable because it unconscionably extinguishes state law remedies.

No claims are subject to dismissal due to tribal immunity because no tribe is sued. Waataatesi is a separate corporate entity. As such, it is entitled to tribal immunity only if it is

deemed an arm of the tribe.  This is a highly fact-driven inquiry and Defendants have the burden of proof.  That determination cannot be made without discovery.  The individual defendants are not entitled to tribal immunity.

### RELEVANT FACTS

**A.**     **GREENLINE'S LENDING PRACTICES**

Greenline is an internet payday lender which peddles high-interest small loans  in Alabama. All of its lending business is conducted over the internet. The annual interest rates Greenline charges range between 200% and 830% annually (the interest rate on Plaintiff's loan is 777.85%). Greenline does not lend in every state.  Instead, it targets its marketing and loan operation into specific states, including Alabama.  (Complaint, ¶¶ 7-9).

Greenline lends through an interactive website.  Every phase of the lending process including application, execution and delivery of loan documents, distribution of loan proceeds and collections is conducted on-line, with the borrower located in Alabama.  (Complaint, ¶¶ 3, 7 & 30).

Greenline's loans blatantly violate Alabama law.  None of the entities or individuals involved in extending Greenline's loans is licensed and the loan rates greatly exceed the legal limit. Greenline attempts to evade state law through use of an arbitration provision which requires that any state law claim be arbitrated but, at the same time, prohibits the arbitrator from applying state law.  (Complaint, ¶¶ 19-26).

**B.**     **THE LOAN TO PLAINTIFF**

Plaintiff lives in Phenix City.  On August 24, 2021, he saw Greenline's on-line marketing message offering quick and readily accessible cash loans.  At that point, Plaintiff's income had been reduced because of the pandemic and he was struggling to pay his bills.  Needing access to

quick cash, he sought an online payday loan.  After providing some basic financial information and verifying his banking information, he was approved for a $300.00 loan.  At that point, he was directed to Greenline's website where he was required to follow a series of prompts in order to receive the funds.  Those prompts included providing his agreement to the terms and conditions. The prompts did not reveal the actual terms of the contract without additional steps.  Plaintiff followed the prompts and accepted the offered loan.  Shortly thereafter, the loan proceeds were electronically transferred into his Alabama checking account.  (Complaint, ¶¶ 29-38) (Declaration of Justin Johnson, attached hereto as Exhibit 1).

The annual percentage rate is 777.85 percent, with the total finance charge of $592.32.  The total amount of payments for this $300.00 loan is $892.32.  (Complaint, ¶ 29).

All the actions taken by Plaintiff to initiate and consummate the loan, including his acceptance of the offered loan terms, were made by him from his home in Phenix City. (Complaint, ¶ 30)(Johnson Decl., (Ex. 1)).

Defendants are not licensed to lend money in Alabama.  (Complaint, ¶¶ 5, 19, 68).

## C.     THE ALABAMA SMALL LOANS ACT

Any Alabama consumer loan in an amount less than $1,500 is governed by the Alabama Small Loans Act, Ala. Code Sections 5-18-1 through 23 (1975)("ASLA").  The ASLA was enacted to address the "evils" created by an increased demand for small loans and the response by opportunistic lenders.  The Alabama legislature found that, as a result of those market forces, "borrowers of small sums are being exploited to the injury of the borrower, his dependents and the general public.  Charges are generally exorbitant in relation to those necessary to the conduct of a legitimate small loan business, trickery and fraud are common and oppressive collection practices are prevalent." Ala. Code § 5-18-2(5).  (Complaint, ¶¶ 14-18).

4

The ASLA prohibits any person from extending small loans in Alabama without a small loan license.  Ala. Code § 5-18-4.  Any loan agreement covered by the Act and made by an unlicensed lender is null and void.  "Any contract of loan in the making or collection of which acts shall have been done which violates this section (licensing requirement) shall be void, and the lender shall have no right to collect, receive, or retain any principal, interest or charges whatsoever."  Ala. Code § 5-18-4(d).  Extending small loans without a license is also a crime.  Ala. Code § 5-18-4(d).

The ASLA also limits the amounts which can be charged in connection with small loans. The highest annual interest rate allowed under the ASLA is 36%.  Ala. Code § 5-18-15.  (Complaint, ¶¶ 14-18).

**D.      GREENLINE'S EFFORTS TO EVADE ALABAMA LAW**

Greenline is a d/b/a of Waawaatesi LLC, ("Waawaatesi"), which claims to be an entity formed under the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("LDF" or the "Tribe").  This arrangement is typical of the scheme, known as "Rent-A-Tribe," whereby a lending operation forms an association with a tribal entity in an attempt to use tribal law and tribal sovereignty to evade otherwise applicable state law.  But there is no connection with the tribe or tribal lands.  The borrower never visits or steps foot on tribal lands.  Every action taken by the borrower to apply for and consummate the loan is done in Alabama.  The tribe's only purpose is to provide a liability shield against state law violations, which it provides for a share of the profits. (Complaint, ¶¶ 2, 19-26).

State usury laws, like Alabama's, present a substantive barrier to Greenline's high-interest loan business.  Federal law, on the other hand, is limited to disclosure requirements and imposes no substantive restraints on what small loan lenders may charge, nor does federal law require

5

licensing.  For this reason, evasion of state laws, like the ASLA, is essential for the operation of Greenline's business. (Complaint,  ¶  ¶  19-26).

Necessary to this scheme are provisions embedded in the loan documents designed to exclude the application of *any* state law.  These schemes, like Greenline's, ban all state law and instead designate tribal law as the exclusive applicable law.  Also necessary to these schemes are arbitration or other dispute resolution clauses designed to prevent a consumer from litigating any state law claim.  (Complaint, ¶¶19-24).

**E.    GREENLINE'S    ARBITRATION    CLAUSE    AND    GOVERNING    LAW PROVISIONS**

Greenline's loan agreement requires that all borrower "disputes" be brought in arbitration. The term "dispute" is to be "given the broadest possible meaning" and specifically includes "all state law claims" and "all claims based upon a violation of any state statute."  [Doc. 17-1 (the loan agreement), p. 9].  "Dispute" also includes issues regarding the "validity and scope" of the arbitration agreement.  At the same time, Greenline's "Governing Law" provision selects tribal law and "applicable federal law" as the exclusive governing law, "without regard to the laws of any state." *Id.*  Thus, while Plaintiff is required to litigate all of his state law claims in arbitration, including any attack on the validity or enforceability of the arbitration clause, the clause assures that he cannot do so.  It prohibits the arbitrator from applying state law.  This scheme has been deemed unenforceable by several federal courts. (Complaint, ¶ 22).

**F.    CLAIMS STATED IN THE COMPLAINT**

Because Plaintiff's loan was made in Alabama it is subject to Alabama law.  Therefore, the loan agreement is void *ab initio* and in its entirety by operation of the ASLA.  Plaintiff seeks a Court determination to that effect.   Plaintiff also seeks the return of all money received in

6

connection with the loan.  Plaintiff asserts his claims for himself and on behalf of a class of Alabama borrowers who obtained loans with Greenline.

## A.   GREENLINE'S ARBITRATION CLAUSE IS UNENFORCEABLE

Any motion to compel arbitration raises the threshold issue of arbitrability, i.e., the validity of the arbitration clause.  This gateway issue is severable and separate from issues regarding the validity of the underlying contract.  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  Normally, the gateway issue of arbitrability is a question for the court.  Attix v. Carrington Mortg. Servs., LLC, 35 F.4th 1284, 1295 (11th Cir. 2022).  Federal arbitration law, however, recognizes the parties' ability to delegate to the arbitrator the question of arbitrability through clear and unmistakable contract language.  Id.  Unlike arbitration clauses in general, delegation clauses are not presumptively valid and the court must "resolve ambiguities in an agreement to arbitrate questions about the arbitrability of those claims in favor of the party opposing arbitration."  Id., at 1296.

If the party opposing arbitration specifically challenges the validity of a delegation clause, either in the complaint or in response to a motion to compel, the court must adjudicate the validity of the delegation clause before proceeding further.  If the delegation clause is deemed unenforceable, then the court must determine the validity of the arbitration agreement as a whole. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 72 (2010); Parnell v. CashCall, Inc., 804 F.3d 1142, 1146–47 (11th Cir. 2015).

Plaintiff raises specific challenges to the delegation clause in the Complaint.  Therefore, the Court, not the arbitrator, must adjudicate those challenges.  Because, for the reasons stated in the Complaint and explained further below, Greenline's delegation clause is unenforceable, the

Court must determine whether the arbitration clause as a whole is enforceable.  For the reasons set out below, it is not.

1.  **Court Must Decide Arbitrability Because the Enforceability of Delegation Clause has Been Challenged**

The unusual and extreme nature of Greenline's arbitration agreement is described in detail in the Complaint, as is Plaintiff's detailed challenges to the arbitration clause and the delegation clause specifically.  Greenline's scheme goes well beyond merely providing an alternate forum for resolving disputes.  It is a tool for extinguishing all state law claims.  With one hand, Greenline's arbitration clause purposefully captures within arbitration every conceivable state law claim and then, with the other, guarantees that no such claim will ever be adjudicated by prohibiting the arbitrator from applying any state law.  (Complaint, ¶¶ 6, 16, 21, 24-30, 36-37, 48, 56(a)).

Defendants ignore this altogether.  Instead, they cite boilerplate arbitration law, as if this were a garden variety arbitration agreement merely dictating a forum.   Defendants makes no mention of, let alone justification for, the clause's unorthodox ban on the application of any substantive state law.  Nor do Defendants explain how the arbitrator could determine the validity of the arbitration clause and adjudicate contract defenses without access to state law.

Also missing from Defendants' analysis is the settled rule that delegation clauses are not *per se* valid.  A delegation clause is only enforceable "absent a challenge to the delegation provision itself. . .."  Parnell, 804 F.3d at 1146–47, *citing* Rent-A-Center, 561 U.S. at 72("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid. . .."); *see also* Attix 35 F.4th at 1303(a court must always consider a validity or enforceability challenge that is "specific" to the delegation agreement before enforcing it); Parm v. Nat'l Bank of California, N.A., 835 F.3d 1331, 1334 (11th Cir. 2016)(arbitrability was properly

decided by court where delegation clause in tribal payday lending contract was specifically challenged).

In both <u>Parm</u> and <u>Parnell</u>, the Eleventh Circuit applied this rule in the context of tribal payday loans.  In <u>Parnell</u>, the court reversed the lower court decision that the arbitration clause was invalid because the lower court failed to first determine whether the delegation clause was directly challenged.  The <u>Parnell</u> panel remanded the case to the district court for a determination as to that issue. 804 F.3d at 1146-49.  On remand, the lower court held that the plaintiff had specifically challenged the delegation clause in his amended complaint.  The district court then held that the delegation clause and the arbitration clause as a whole were unenforceable because the forum was illusory and because the ban on state claims was "in bad faith-as a means of discouraging borrowers from pursuing legitimate claims or as a means to escape regulation by state agencies."  <u>Parnell v. CashCall, Inc.</u>, 181 F. Supp. 3d 1025, 1038 (N.D. Ga. 2016).  On (the second) appeal, the Eleventh Circuit agreed that the amended complaint sufficiently challenged the delegation clause and affirmed the lower court decision invalidating the entire agreement.  <u>Parnell v. W. Sky Fin., LLC</u>, 664 F. App'x 841 (11th Cir. 2016).

In <u>Parm</u>, the court agreed with the lower court that the delegation clause was specifically challenged.  It upheld the lower court's ruling that the delegation clause and the arbitration agreement as a whole were unenforceable because the selected forum did not exist.  835 F.3d at 1334-38.

The <u>Parm</u> and <u>Parnell</u> decisions are in line with other circuit courts applying <u>Rent-A-Center</u> in the tribal loan context. "As with any other agreement to arbitrate, when a party challenges a delegation clause specifically, the court must evaluate the validity of the delegation 'before ordering compliance' with the clause."  <u>Hengle v. Treppa</u>, 19 F.4th 324, 335 (4th Cir. 2021), <u>cert.</u>

dismissed sub nom. <u>Asner v. Hengle</u>, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022)(because the delegation clause in a tribal payday loan agreement was specifically challenged, <u>Rent-A-Center</u> requires the court to adjudicate those challenges); <u>Gibbs v. Sequoia Cap. Operations, LLC</u>, 966 F.3d 286, 291 (4th Cir. 2020)(same); <u>Gingras v. Think Fin., Inc.</u>, 922 F.3d 112, 126 (2d Cir. 2019)(same); <u>MacDonald v. CashCall, Inc</u>, 883 F.3d 220, 227 (3d Cir. 2018) (same).

Defendants make no mention of the Complaint's multiple specific challenges to the delegation clause, nor do they reference the <u>Rent-A-Center</u> rule.   Instead, they cite <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, ___U.S. ___,139 S. Ct. 524, 527, 202 L. Ed. 2d 480 (2019), for the oversimplistic proposition that delegation clauses are enforceable under all circumstances. That is not the holding in <u>Schein</u>.  That case addressed the narrow "wholly groundless" doctrine whereby some circuit courts bypassed delegation clauses if arbitrability appeared "wholly groundless."[2]   In striking down the "wholly groundless" exception, <u>Schein</u> never discussed, much less reversed, the separate <u>Rent-A-Center</u> rule requiring court adjudication of specific challenges to a delegation clause.  To the contrary, <u>Schein</u> cites <u>Rent-A-Center</u> with approval.  *See* 139 S. Ct. at 526.  Importantly, no Circuit has held that <u>Schein</u> abrogated <u>Rent-A-Center</u>, and at least three circuit courts have directly rejected Defendants' argument.  <u>Hengle</u>, 19 F.4th at 335 n.1 (4th Cir.) ("[W]hile <u>Henry Schein</u> emphasized that courts may not 'short-circuit' valid delegation clauses. . . it did not undermine the principle that a court must consider a litigant's challenge to the validity

_____

[2]The <u>Schein</u> holding has no practical effect in the Eleventh Circuit because it never embraced this "wholly groundless" doctrine in the first place.  <u>Jones v. Waffle House, Inc.</u>, 866 F.3d 1257, 1269 (11th Cir. 2017)("We join the Tenth Circuit in declining to adopt what has come to be known as the wholly groundless exception.")

of a delegation clause."); <u>Williams v. Medley Opportunity Fund II, LP</u>, 965 F.3d 229, 237 (3d Cir. 2020)(rejecting argument that <u>Schein</u> overturned Rent-A-Center rule requiring judicial review of challenges to a delegation clause); <u>Gingras</u>, 922 F.3d at 126 n.3 (2d Cir.) (<u>Schein</u> has no bearing on cases wherein there are specific challenges to a delegation clause); *accord*, <u>Lloyd's Syndicate 457 v. FloaTEC, L.L.C.</u>, 921 F.3d 508, 515 n.4 (5th Cir. 2019).[3]

Defendants' only other argument in support of the delegation clause is their citation to <u>Easley v. WLCC II</u>, No. CV 1:21-00049-KD-MU, 2021 WL 4228876, at *1 (S.D. Ala. Sept. 16, 2021), <u>appeal dismissed,</u> No. 21-13217-JJ, 2022 WL 829038 (11th Cir. Jan. 24, 2022), for the proposition that the arbitrator must decide arbitrability in all cases.  Defendants have <u>Easley</u> exactly backwards.  Easley did not file her claim "after being unsatisfied with arbitration."  (Doc. 17, p. 11).  To the contrary, she was very satisfied with arbitration – she *won*![4]  She filed her case in arbitration, seeking a declaration that her tribal payday loans were void and unenforceable.  The arbitrator agreed.  In an 8-page detailed opinion, the arbitrator declared that her loans subject to Alabama law, void *ab initio* by operation of the ASLA and were void because they are premised on a crime.  The arbitrator further held that there was no sovereign immunity protecting off-reservation activities which violate state law, and, in any event, any sovereign immunity had been waived.  (A copy of the Easley Final Award is attached hereto as Exhibit 2).

---

[3]The Eleventh Circuit's recent decision in <u>Attix v. Carrington Mortg. Servs., LLC</u>, 35 F.4th 1284, 1296 (11th Cir. 2022), illustrates that the <u>Rent-A-Center</u> rule remains intact post-<u>Schein.</u>  <u>Attix</u> recognized <u>Schein</u>'s holding with respect to the "wholly groundless" doctrine, but nevertheless applied the <u>Rent-A-Center</u> rule regarding challenged delegation clauses. *See also*; <u>In re Checking Acct. Overdraft Litig.</u>, 856 F. App'x 238, 245 (11th Cir. 2021)(applying the <u>Rent-A-Center</u> rule post-<u>Schein</u>).

[4]The undersigned represented Ms. Easley in that case.

Easley then sued in state court to confirm the award.  She also included claims for return of the money paid on the voided loan and a class claim for relief under the ASLA.  WLCC removed the case to federal court.[5]   The Final Award was confirmed.   WLCC did not oppose the confirmation.  Instead, it argued that her claims should be sent (back) to arbitration.  Magistrate Judge Bradley Murray, after oral argument, correctly held that the arbitrator's declaration of the contracts as void rendered the arbitration clause void as well; and, therefore, there was no basis for requiring Easley to (re)arbitrate the issue of contract validity which had already been determined by the arbitrator.  Easley v. WLCC II, No. CV 21-0049-KD-MU, 2021 WL 6053077, at *3 (S.D. Ala. Aug. 11, 2021), report and recommendation rejected, 2021 WL 4228876 (S.D. Ala. Sept. 16, 2021).  Judge Dubose accepted the recommendation to confirm the Final Award.  But she rejected the recommendation with respect to arbitration.  Misapplying the concept of the separateness of arbitrability and the validity of a contract, Judge Dubose incorrectly enforced the voided arbitration contract and held that Easle was required to (re)arbitrate her claims.  2021 WL 4228876, at 8.  The case was then settled on appeal.

Easley has no application here.  Easley did not address a delegation clause (or challenges thereto) because the claims were initiated in arbitration.  Arbitrability was not an issue.  Once in court to confirm the award, there was no need to address any delegation clause because the entire agreement had already been declared void.

Here, the Complaint brings the validity of delegation clause to the forefront by asserting several specific challenges.  The Complaint asserts that the delegation clause itself is an integral

---

[5]The Easley case number is 21-CV-00049-KD-MU (S.D. Ala).

component of the scheme to deprive borrowers of state law claims.  (Complaint, ¶¶ 26, 37, 48, 56(a)(v)).  The Complaint also asserts that the ban on state law renders the delegation clause unworkable because it prevents the application of state law to questions of contract formation and enforceability, as well as contract defenses, as required under the Federal Arbitration Act.  (Id., ¶¶ 27, 37, 48, 56(a)(v)).  And the Complaint asserts that the delegation clause, together with the express ban on applying state law, unconscionably deprives borrowers of state law defenses to the arbitration clause, including the ASLA which would render the entire loan, including the arbitration clause, void *ab initio*.  (Id., ¶¶ 26, 37, 48, 56(a)(v)).  Because Plaintiff specifically challenges the delegation clause, it is for the Court, not the arbitrator, to adjudicate these challenges and determine arbitrability.  Attix 35 F.4th at 1303.  For the reasons stated below, the ban on the application of state law renders the delegation clause invalid.

## 2.  The Ban on State Law Renders the Delegation Clause Invalid

The validity and enforceability of any arbitration clause must be determined "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The "grounds as exist" to determine contract formation, validity and contract defenses reside in state law.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . . should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Therefore, state law contract defenses must be applied to determine the enforceability of an arbitration clause, as long as the state law applied does not discriminate against arbitration.  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 343 (2011)(effect of FAA Section 2 is to preserve generally applicable state law contract defenses); Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687

(1996) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements").

FAA's mandate that arbitration clauses be placed on equal footing with any other contract cannot be accomplished without access to a body of state contract law:

> [The FAA] retains an external body of law governing revocation (such grounds "as exist at law or in equity"). . .. "[S]tate law," therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."

Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009) *quoting* Perry v. Thomas, 482 U.S. 483, 492, 107 S. Ct. 2520, 2527, 96 L. Ed. 2d 426 (1987).  Applying these principles, the Eleventh Circuit has "consistently . . . held that state law governs the issue of the existence of an agreement to arbitrate under the FAA since First Options of Chicago was decided."  Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1330 (11th Cir. 2016), *see also* Larsen v. Citibank FSB, 871 F.3d 1295, 1302–03 (11th Cir. 2017); Burch v. P.J. Cheese, Inc., 861 F.3d 1338, 1346 (11th Cir. 2017).

Courts addressing similar provisions in tribal payday loan agreements consistently hold that the state law ban improperly deprives the arbitrator the tools necessary to determine arbitrability.  The Fourth Circuit recently affirmed a ruling that a ban on state law in a tribal loan contract rendered the delegation clause unenforceable.  Hengle v. Treppa, 19 F.4th 324, 339 (4th Cir. 2021), cert. dismissed sub nom. Asner v. Hengle, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022).  In Hengle, the tribal loan contract included an outright ban on any state law, but stated that the contract be governed by the FAA.  The court held that the ban on state law was fatal because it prohibited the application of state law defenses mandated by Section 2 of the FAA.  Id., at 340.  Reference to the FAA did not save the clause because the mandate in Section 2 requires access to state law and the clause prohibits the arbitrator from applying state law.  Id

Lower courts addressing the same issue consistently hold that the state law ban renders the delegation clause unworkable.  Dunn v. Glob. Tr. Mgmt., LLC, 506 F.Supp.3d 1214, 1231 (M.D. Fla. 2020)("In practical terms, enforcing the delegation clause (with a state law ban) would put the arbitrator in the impossible position of deciding the validity/enforceability of the agreement without a body of contract law to draw from."); Gibbs v. Stinson, 421 F. Supp. 3d 267, 291 (E.D. Va. 2019) aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286 (4th Cir. 2020) ("Defendants' approach would require an arbitrator to determine whether a valid and enforceable arbitration agreement exists absent the federal or state law tools necessary to do so."); MacDonald v. CashCall, Inc, 2017 WL 1536427, at *4 (D.N.J. Apr. 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018)("[I]f the question of the enforceability of the arbitration clause were sent to an arbitrator, he or she would be categorically prohibited from applying any federal or state law to arrive at an answer."); Smith v. W. Sky Fin., LLC, 168 F. Supp. 3d 778, 786 (E.D. Pa. 2016)("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding the enforceability of the agreement *without* authority to apply any applicable federal or state law")(emphasis in original).  The same is true here.

To begin with, this is an Alabama contract and Alabama law applies.  Alabama follows the doctrine of *lex loci contractus,* which states that a contract is governed by the law of the jurisdiction within which the contract is made.  Lifestar Response of Alabama, Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009).[6]  "A contract is formed (made) upon acceptance (the expression or manifestation of assent to the terms offered) of an offer, and acceptance is the last act necessary to

---

[6]A court sitting in diversity applies the choice of law rules of the forum state.  Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007).

complete a contract.  <u>Vascular Ventures, LLC v. Am. Vascular Access, LLC</u>, 2017 WL 4638597, at *4 (S.D. Ala. Oct. 16, 2017); *see also* <u>Parnell</u>, 804 F.3d at 1147 (Georgia law applied to internet payday loan where Plaintiff was in Georgia when he viewed and signed the loan agreement); <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1368 (11th Cir. 2005)("[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts").

Here, all the actions taken by Plaintiff to form the contract, including his acceptance, took place in Alabama.  Therefore, because this is an Alabama contract, the validity of the arbitration clause is to be determined by Alabama law.  Put another way, Alabama law provides the "grounds that exist at law or in equity for the revocation of any contract" which must be applied under FAA § 2.  But the contract prohibits the arbitrator from applying Alabama law (or the law of any other state, for that matter).  That prevents the assertion of contract defenses which would apply to any other contract, including those provided under the ASLA.  It is impossible, therefore, for an arbitrator to determine arbitrability in accordance with "grounds that exist" as to any other contract. The state law ban leaves Plaintiff "unable to raise contract defenses to challenge the agreement as the FAA explicitly allows." <u>Dunn</u>, 506 F.Supp.3d at 1231.  Thus, for the same reasons articulated in <u>Hengle</u>, <u>Dunn</u>, <u>Gibbs</u>, <u>MacDonald</u> and <u>Smith</u>, Greenline's delegation clause is unworkable and cannot be enforced.

Because the delegation clause is invalid, the Court must decide the validity of the arbitration clause as a whole. For each of the reasons state below, the arbitration clause is unenforceable.

**3. <u>The Ban on State Law Renders the Entire Arbitration Clause Unenforceable as Against Fundamental Alabama Public Policy</u>**

16

Alabama courts may not enforce forum selection or arbitration provisions which violate express public policy.  Ex parte Thicklin, 824 So. 2d 723, 732 (Ala. 2002), *overruled on other grounds by* Patriot Mfg., Inc. v. Jackson, 929 So. 2d 997 (Ala. 2005).  Such a provision is "unenforceable, regardless of whether the parties contemplated the resolution of disputes by arbitration or through judicial proceedings."  Id. at 731; *see also* Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991)(choice of law clause selecting North Carolina law, which allowed non-compete clauses, was unenforceable because it violated Alabama's (then) ban on enforcement of such clauses).

This rule is likewise applied by the Eleventh Circuit.  In Davis v. Oasis Legal Fin. Operating Co., LLC, 936 F.3d 1174, 1176 (11th Cir. 2019), the court refused to enforce a forum selection clause in a payday lending contract when doing so would violate fundamental Georgia state policy.  Every circuit court addressing tribal payday loans banning state law claims has refused to enforce the arbitration clauses because they are aimed at skirting state policies addressing usury.  Hengle, 19 F.4th at 339 (arbitration clause in tribal payday loan designed to avoid state usury law unenforceable as against public policy); Gingras, 922 F.3d at 127 (2nd Cir.)(same); *see also* Hayes v. Delbert Servs. Corp., 811 F.3d 666 (4th Cir. 2016)(declaring the arbitration clause a "farce"); Jackson v. Payday Fin., LLC, 764 F.3d 765 (7th Cir. 2014)(holding that the arbitration scheme was "a sham from stem to stern").  The only circuit court decision endorsing a similar clause was the Ninth Circuit's in Brice v. Haynes Invs., LLC, 13 F.4th 823 (9th Cir. 2021), *reh'g en banc granted, opinion vacated sub nom.* Brice v. Plain Green, LLC, 35

17

F.4th 1219 (9th Cir. 2022).   However, the Ninth Circuit recently granted *en banc* review and vacated the opinion.  35 F.4th 1219.[7]

The public policy expressed in the ASLA could not be clearer.  The legislature identified the harm inflicted on working Alabamians (as well as legitimate lenders) by the predatory practices by small loan lenders.  Ala. Code § 5-18-2.  The ASLA is an expression of long-standing Alabama policy "to condemn usurious contracts as " 'tainted with an evil ... intent' " and " 'offensive to the policy and positive mandate of the law.'"  Austin v. Alabama Check Cashers Ass'n, 936 So. 2d 1014, 1036 (Ala. 2005), *quoting* State ex rel. Embry v. Bynum, 243 Ala. 138, 143, 9 So. 2d 134, 139 (1942).  The legislature also decried the "trickery and fraud" which it found "prevalent" in the small lending business. Ala. Code § 5-18-2(5).  To address this problem, the legislature established a system requiring each lender to be licensed and requiring each licensee to abide by statutory limits on interest charges.  Ala. Code 5-18-4(a).  But the Act goes further.  It protects victims of unlicensed lenders by expressly declaring those loans void and declaring that unlicensed lenders have "no right to collect, receive, or retain any principal, interest, or charges whatsoever."  Ala. Code § 5-18-4(d).   And the act expressly prohibits the use of any "subterfuge or pretense whatsoever" to evade the license requirements, including "through the use of activity of a third person." (e.g., an Indian tribe). Ala. Code 5-18-4(c).   The ASLA is a remedial statute and is to be interpreted broadly in accordance with its purpose.  Austin, 936 So. 2d at 1026.

---

[7]The case was then settled and the appeal dismissed.

On the other hand, Greenline's contract, if enforced, eviscerates every aspect of the ASLA. It bypasses the licensure requirements entirely, allowing unlicensed loans to Alabamians with impunity.  It nullifies the ASLA's substantive protections by allowing small loans to Alabama residents at rates far in excess of the statutory ceilings.  Moreover, allowing a tribal affiliation and tribal law to a shield the loans from the ASLA's prohibitions is precisely the type of "subterfuge" specifically prohibited in Section 5-18-4(c).[8]   In short, Greenline's scheme exposes Alabama borrowers to precisely the predatory lending practices the Act means to shield them from, and its evasive tactics are exactly those which ASLA prohibits.  Because arbitration under Greenline's contract would exclude the remedies and protections provided by the ASLA, it offends the public policy manifested therein and it is unenforceable.

### 4.   <u>The Arbitration Clause is Unenforceable Because the Loan Agreement is Void</u>

Where a contract containing an arbitration clause is void, none of its provisions, including an arbitration clause or class waiver, is unenforceable. <u>Macon Cty. Greyhound Park, Inc. v. Hoffman</u>, 226 So. 3d 152, 169 (Ala. 2016)(arbitration contract contained in illegal gambling contract unenforceable because the contract as a whole is void); <u>Alabama Catalog Sales v. Harris</u>, 794 So. 2d 312, 317 (Ala. 2000)(arbitration agreement in loan contract deemed void under the ASLA is unenforceable); <u>Camaro Trading Co. v. Nissei Sangyo Am., Ltd.</u>, 577 So. 2d 1274, 1274 (Ala. 1991)(arbitration clause not enforceable because it was part of a contract which was void by operation of Alabama law because the defendant was not licensed in Alabama).  "'Clearly, if a

---

[8]That subsection is titled "Evasions" and states as follows: "The provisions of subsection (a) of this section (licensing requirement) shall apply to any person who seeks to evade its application by any device, subterfuge, or pretense whatsoever including, but not thereby limiting the generality of the foregoing: . .. the real or pretended negotiation, arrangement, or procurement of a loan through any use of activity of a third person, whether real or fictitious."  Ala. Code § 5-18-4(c).

party cannot be forced to arbitrate if the contract does not contain a valid arbitration clause, then a party cannot be forced to arbitrate if the contract containing the arbitration clause, which gives the arbitration clause viability, is found to be void.'" Camaro Trading Co., 577 So. 2d at 1275 *quoting* A.J. Taft Coal Co. v. S & H Contractors, Inc., 1988 WL 235668, at *5 (N.D. Ga. Oct. 4, 1988).

Greenline's loan agreement is void thrice over. First, the express provisions of the ASLA render the entire agreement void *ab initio*. Section 5-18-4(d) proclaims that "[a]ny contract of loan in the making or collection of which any Act shall have been done which violates this section shall be void, and the lender shall have no right to collect, receive, or retain any principal, interest, or charges whatsoever." The Alabama Supreme Court in Alabama Catalog Sales found that a catalog sales scheme was governed by the ASLA and, because the lender was not licensed, was void by operation of the ASLA. The court further held that the arbitration clause in the voided contract was also void and unenforceable. "Thus, if the contracts are void and unenforceable (by operation of the ASLA), no claims arising out of or relating to the contracts are subject to arbitration." Alabama Catalog Sales, 794 So. 2d 312, 317 (Ala. 2000).

Second, even without regard to the express edict in Section 5-18-4(d), Alabama law renders void any contract whose terms contradict statutory requirements. In Alabama law, 'every contract' "adverse to the enactments of the [Alabama] legislature, is illegal and void." Perdue v. Green, 127 So. 3d 343, 358 (Ala. 2012), *on reh'g* (July 11, 2012). "As we have always held to be the law in Alabama, whenever regulation and protection are the goal of a statute, contracts made in derogation of that statue are null, void and unenforceable." Derico v. Duncan, 410 So. 2d 27 (Ala.1982) (abrogated on other grounds by statute) (loan agreement made by lender not licensed under the Mini-Code was void in its entirety). "An act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of

20

qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void, and unenforceable in actions for the recovery of compensation and the like."  Knight v. Watson, 221 Ala. 69, 70, 127 So. 841, 842 (1930).

Finally, the Greenline agreement is void in its entirety because the act which created the loan (extending a small loan without a license) is a crime.  The Alabama Supreme Court in Macon County held that no provision, including an arbitration clause, contained in a contract created by and/or premised upon illegal activity may be enforced.  226 So. 3d at 167. That case addressed the enforceability of arbitration clauses embedded in contracts between video gamblers and the owner of electronic bingo machines.  The Court made clear that no provision in an illegal contract, including an arbitration clause, may be enforced.  "To suggest that a court should enforce any provision in a contract that is based on illegal conduct and that is void as a matter of law, particularly when the agreement to arbitrate is itself based on gambling consideration, is unconscionable." Id., at 169.

Greenline's loan agreement falls squarely within the Macon County doctrine.  The underlying act which created each of these loans – extending a small loan without a license - is a crime.  The subject matter of the transactions – small loans initiated by an unlicensed lender – is a crime and a transaction deemed by the legislature to be void *ab initio*. Under Macon County, none of the loan provisions is enforceable, including the arbitration provision.

Because Greenline's contract is void, the entire contract, including the arbitration clause and the class action waiver, is void.  The entire agreement is nullified and none of the written provisions made by enforced.  Macon County, 226 So. 3d at 169; Alabama Catalog Sales, 794 So. 2d at 317; Camaro Trading Co., 577 So. 2d at 1274;

21

5. **The Arbitration Clause is Unenforceable Because it Unconscionably Denies Plaintiff State Law Remedies**

In Alabama, a contract is unconscionable where (1) there was an absence of meaningful choice on one party's part, (2) the contractual terms are unreasonably favorable to one party, (3) there was unequal bargaining power among the parties, and (4) where terms are one-sided or patently unfair terms in the contract. Am. Gen. Fin., Inc. v. Branch, 793 So. 2d 738, 748 (Ala. 2000); Layne v. Garner, 612 So. 2d 404, 408 (Ala. 1992).

Clauses which limit or bar important state law remedies are unconscionable. Ex parte Thicklin, 824 So. 2d at 731 (arbitration clause which limited punitive damages was unconscionable); Wingard v. Lansforsakringar AB, 2012 WL 5258717, at *9 (M.D. Ala. Oct. 23, 2012), adhered to on reconsideration, 2013 WL 5493177 (M.D. Ala. Sept. 30, 2013)(refused enforcement of choice-of-law provision (Sweden) because it prevented wrongful death remedies otherwise available under Alabama law).

In Ex parte Terex USA, LLC, 260 So. 3d 813, 822 (Ala. 2018), the Alabama Supreme Court refused to enforce an outbound forum-selection clause forcing an Alabama heavy equipment dealer to file suit in George and a choice of law clause selecting Georgia law as the exclusive law. The court held that enforcement of the forum selection clause would circumvent the protections provided to Alabama equipment dealers under the Alabama Heavy Equipment Act ("AHEDA"). Id. at 822.

The same is true here. The central purpose and effect of Greenline's arbitration and choice of law provisions is to extinguish all state law claims, including the statutory protections provided in the ASLA. To accomplish this, Greenline employs an extremely broad scope provision, which

specifically includes all state law claims; and then, through the ban on application of any state law, prevents the adjudication of any state law claims.

Greenline's contract does not simply provide an alternate forum for adjudication of state law claims; it guarantees that no state claims be adjudicated at all.  Such a scheme is patently unfair and unenforceable in Alabama because it "limits not only the right to a specific *forum,* but the *right to a remedy itself."*  Am. Gen. Fin., Inc. v. Branch, 793 So. 2d 738, 750 (Ala. 2000)(emphasis in original).

Numerous courts have struck down similar mechanisms in tribal payday loan agreement which seek to extinguish state consumer protections.  In fact, no court has endorsed an arbitration clause with this extreme effect.  "With one hand, the arbitration agreement offers an alternative dispute resolution procedure in which aggrieved persons may bring their claims, and with the other, it proceeds to take those very claims away. The just and efficient system of arbitration intended by Congress when it passed the FAA may not play host to this sort of farce."  Hayes, 811 F.3d at 673–74 (finding a similar mechanism in a tribal payday loan to be unconscionable); *see also* Williams, 965 F.3d at 241 (3d Cir.) 2020)(same); Gingras, 922 F.3d at 127 (2ⁿᵈ Cir.) (same); Dunn, 506 F.Supp.3d at 1236 ("[T]his scheme seeks to abuse the arbitral forum by using it to evade state consumer finance protections and usury laws that [lender] could not otherwise avoid. This sort of charade is not what Congress had in mind when it passed the FAA."); *see also* Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1254 (11th Cir. 2011)(forum-selection clauses designed to discourage legitimate claims are unenforceable as fundamentally unfair).

The fundamental unfairness in capturing state law claims only to extinguish them is enough to render Greenline's clause unenforceable.  *See, e.g.*, Ex parte Terex USA, LLC, 260 So. 3d at 822.  But also relevant is the presentment of the clause and the contract's adhesive nature.  The

arbitration and choice of law clauses are buried in an 11-page electronic statement of terms.  Once Plaintiff was approved for the loan, he was automatically directed through prompts to the spaces for his electronic signature.  Viewing the actual language required additional steps.  The agreement is an adhesion contract, loaded with multiple pages of fine print including the language requiring arbitration and banning state law. This was a take it or leave it proposition.  Plaintiff had no opportunity to negotiate terms or to obtain a loan without the offending language on different terms.  (Johnson Declaration, Exhibit 1); <u>Parnell</u>, 181 F. Supp. 3d at 1037 (finding that the forum-selection clause in an online tribal payday loan was "not the product of arms'-length negotiations. Defendants themselves placed the forum-selection clause into the Parnell Loan Agreement and instructed Plaintiff to sign it in order to receive his loan.").

Greenline's arbitration clause is unenforceable because it unconscionably denies Plaintiff the remedies provided under Alabama law.

## B.   GREENLINE'S CLASS ACTION WAIVER IS UNENFORCEABLE

Defendants move to dismiss Plaintiff's "class claims" pursuant to Rule 12(b)(6) based on a purported class waiver contained within the arbitration clause discussed above.  However, there is no such thing as a "class claim."  A class action is a procedural device that permits one or more plaintiffs to file and prosecute a lawsuit on behalf of a larger group, authorized by Rule 23 F.R.C.P. <u>Hansberry v. Lee</u>, 311 U.S. 32 (1940).  Rule 23 does not, and cannot, create any substantive claims. Under the Rules Enabling Act, 28 U. S. C. §2072(a), the federal rules of civil procedure "shall not abridge, enlarge or modify any substantive right," § 2072(b).   Thus, the class action device defines procedure, not claims.  <u>Shady Grove Orthopedic Assoc. v Allstate Ins. Co.</u>, 559 U.S. 393 (2010);

Lisk v. Lumber One Wood Preserving, LLC, 792 F.3d 1331, 1338 (11th Cir. 2015)("Rule 23 does not 'abridge, enlarge or modify any substantive right'. . ..").   If at all, Defendants' argument is appropriate at the class certification stage, not at the motion to dismiss stage.

Further, the purported class action waiver in the loan agreement is void for all of the same reasons the arbitration agreement is void.  First, the waiver is inextricably bound to the arbitration clause and when the arbitration clause fails the waiver fails as well.  Brewer v Missouri Title Loans, 364 S.W. 3d 486 (Mo 2012)(class waiver unconscionable when entire arbitration clause unconscionable).  The contract itself ties the class action waiver to the arbitration agreement, stating that the waiver is based on the agreement to arbitrate.  See Doc. 17-1 at 6.  With no arbitration clause there is no class waiver.

Additionally, for the reasons set out above, the entire contract is void, including any class waiver, and cannot be enforced.  As the contract is void, the waiver contained in the contract is also void.  Alabama Catalog Sales,794 So. 2d at 317; Camaro Trading Co., 577 So. 2d at 1274.

C.      **NO CLAIMS ARE DUE TO BE DISMISSED BECAUSE OF TRIBAL IMMUNITY**

Defendants' entire immunity argument assumes a tribe has been sued.  That is not the case.  The sole corporate defendant is Waawaatesi LLC, described in the Complaint as a limited liability company which includes a member who claims to be a tribe.  (Complaint, ¶ 2).  Waawaatesi is not a tribe.  It is a separate corporate entity.  Whether it is entitled to immunity as an arm of the tribe is a fact-specific inquiry and not subject to dismissal on this record.

Defendants have the burden of proving tribal immunity.  *See* Williams v. Big Picture Loans, LLC, 929 F.3d 170 (4th Cir. 2019); People, ex rel. Owen, v. Miami Nation Enterprises, 386 P.3d 357 (Cal. 2016).

> Tribal immunity is akin to an affirmative defense in that a tribe (or arm of a tribe) must invoke immunity; a plaintiff does not have the burden to plead sufficient facts to defeat immunity.

Easley v. Hummingbird Funds, 2020 WL 5099941 (S.D. Ala. Aug. 8, 2020).  The limited evidence submitted by the Defendants regarding the formation and ownership of Waawaatesi LLC fails to carry this burden.

Whether an independent entity is an arm of the tribe is highly fact-specific issue.  The most comprehensive, and widely accepted, statement of the factors to be considered by the court in making an arm of the tribe determination was set forth by the Tenth Circuit Court of Appeals in Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173 (10th Cir. 2010).  In that case, the court surveyed the laws that existed at that time and concluded the following factors are helpful in forming the inquiry as to whether a tribe's economic entity shares in the tribe's immunity: the method of creation of the economic entities; their purpose; their structure, ownership, and management, including the amount of control the tribe has over the entities; the tribe's intent with respect to the sharing of its sovereign immunity; and the financial relationship between the tribe and the entities.  These five Breakthrough factors have been widely accepted.  White v. University of California, 765 F.3d 1010, 1026 (9th Cir. 2014); Williams, 929 F.3d at 177; Solomon v. Am. Web Loan, 375 F. Supp. 3d 638, 652 (E.D. Va. 2019). It is the Defendants' burden to establish, through this fact-specific analysis, that Waawaatesi is a tribal arm.  Moreover, the Complaint alleges that any sovereign immunity has been waived by the actions taken with respect to Plaintiff's loan.  (Complaint, ¶¶ 39-40 & 50).

26

Thus, whether Waawaatesi is entitled to tribal immunity in the first place and whether it has waived of any immunity are fact-driven issues. Defendant relies on a declaration which claims Waawaatesi is owned by LDF Holdings, LLC, which is in turn owned by another corporation; the Tribe owns and/or controls LDF Holdings, LLC and its subsidiaries; and LDF Holdings, LLC owns and/or controls and manages Waawaatesi. Those facts, while relevant, do not satisfy the inquiry the court is required to make to extend sovereign immunity to the third-party LLC. Further, the decision on extending immunity any of the Defendants should only be adjudicated after discovery. See Plaintiff's Motion for Jurisdictional Discovery filed contemporaneously with this response.

Defendants Lorenzo and Wildcat argue that they are also entitled to sovereign immunity from this suit as tribal officials, relying on the Ninth Circuit court's opinion in Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2008). That principle has no application in this case. The Eleventh Circuit recognizes that the exception to sovereign immunity set forth in Ex parte Young, 209 U.S. 123, 155-56 (1908), applies to suits seeking injunctive relief against tribal officials. Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, 177 F.3d 1212, 1225 (11th Cir. 1999). The exception to immunity applies to both federal law claims and to state law claims. Citing Michigan v. Bay Mills Indian Cmty, 572 U.S. 782 (2014), the Eleventh Circuit held in Alabama v. PCI Gaming Authority, 801 F.3d 1278, 1290 (2015), that "tribal officials may be subject to suit in federal court for violations of state law under the fiction of Ex parte Young when their conduct occurs outside of Indian lands." In Bay Mills, the Supreme Court held that the Indian Gaming Regulatory Act did not abrogate tribal sovereign immunity from a state's suit to enjoin off-reservation gaming, and thus Michigan could not bring suit against the Bay Mills Indian Community for opening a casino off tribal lands. The Court suggested, however, that "Michigan

could bring suit against tribal officials or employees (rather than the tribe itself) for, say, gambling without a license."  By analogy to <u>Ex parte Young</u>, the Court explained, "tribal immunity does not bar such suit[s] for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct."

The holding in <u>PCI Gaming</u> is in line with other cases specifically dealing with tribal lending.  *See* <u>Gingras v. Think Fin., Inc.</u>, 922 F.3d 112, 122-24 (2d Cir. 2019) ("Application of the <u>Ex parte Young</u> exception represents a balanced approach that accounts for the competing interest of two sovereigns, tribes and states, and allows the state to enforce its laws against tribal officials while 'providing a neutral forum for the peaceful resolution of disputes between domestic sovereigns and it fairly holds Indian tribes acting [off reservation] to their obligation to comply with generally applicable state law.'"); <u>Great Plains Lending, LLC v. Dep't of Banking</u>, 339 Conn. 112, 259 A.3d 1128 (2021)(recognizing that tribal officials are not immune from a suit for prospective injunctive relief, relying on <u>Gingras</u>).   Thus, the individual Defendants have no immunity even if the Court were to conclude that Waawaatesi, LLC is an arm of the tribe.

### D. <u>THE COMPLAINT ADEQUATELY IDENTIFIES THE CLAIMS AND IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING.</u>

Defendants' assertion that the Complaint is an impermissible shotgun pleading which fails to adequately state claims against each Defendant is completely without merit.

Under Rule 8, Plaintiffs need not plead "detailed factual allegations," but need only set forth enough facts to state a plausible entitlement to relief. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which

it rests.") (citations and alteration omitted).  The test calls for "more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

A shotgun pleading is one which "fails to satisfy these basic requirements.  Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so."  Estate of Bass v Regions Bank Inc., 947 F.3d 1352, 1358 (11th Cir. 2020).  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Weiland v Palm BeachCounty Sheriff's Office, 792 F.3d 1313,1323 (11th Cir. 2015).

This description has no application here.  The Complaint explains in detail each Defendant's role in the Greenline scheme.   Greenline is a d/b/a of Waawaatesi  Greenline is the lending label under which Waawaatesi conducts the illegal lending operation. (Complaint, ¶¶ 2-3, 20-23).  The Complaint alleges that Defendant Lorenzo is personally involved in the illegal loan scheme and has the power to stop the practices.  (Id., ¶ 10).  Defendant Wildcat is the president of the LDF tribe and responsible for its financial operations, including its decision to engage in illegal lending.  (Id., ¶ 11).   All of the Defendants were directly involved in the legal lending activities.  (Id., ¶ 13).   At the same time, the ASLA requirements apply to any "person" "engage[d] in the business of lending."  Ala. Code § 5-18-4(a).   "Person" is defined to include individuals and corporate entities.  Ala. Code § 5-18-3(1).

The mere fact the Complaint alleges that the Defendants collectively schemed to violate the ASLA does not make it an infirm shotgun pleading.  "The fact that defendants are accused collectively does not render the complaint deficient."  Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000). As in Kyle, the Complaint here "can be fairly read to aver that all defendants are

responsible for the alleged conduct." Id.; *accord* Ray v. Foltz, 370 F.3d 1079, 1083 n.2 (11th Cir. 2004); *see also* JAWHBS, LLC v. Arevalo, 2017 WL 1345141, at *5 (S.D. Fla. Apr. 12, 2017) (rejecting defendants' argument that complaint should be dismissed as shotgun pleading because allegations were against "groups of Defendants"); Huff v. Bobcat N. Am., LLC, 2019 WL 8273658, at *6 (M.D. Fla. Oct. 16, 2019) (denying motion to dismiss complaint where plaintiffs referred to "Defendants" throughout the complaint).

## CONCLUSION

For all the reasons stated above, Defendants' Motion to Dismiss is due to be denied.

*/s/ Kenneth J. Riemer*
KENNETH J. RIEMER (RIE003)
Riemer Law, LLC
2153 Airport Boulevard
Mobile, AL 36606
Kriemer01@gmail.com
(251) 432-9212 Phone
(251) 433-7172

*/s/ Steven L. Nicholas*
STEVEN L. NICHOLAS (NIC2021)
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
sln@cunninghambounds.com
(251) 471-6191 Phone
(251) 479-1031 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of September, 2022, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Kenneth J. Riemer*
KENNETH J. RIEMER